## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMIE EDMONDSON, aka Jaime
Edmondson Longoria, *et al.*,

      Plaintiffs,

v.                                                    Case No: 8:16-cv-03243-T-17AEP

2001LIVE, INC. d/b/a 2001 ODYSSEY
and 2001, INC. d/b/a 2001 ODYSSEY,

      Defendants.

_____

### ORDER

**THIS CAUSE** comes before the Court upon Plaintiff's Motion for Partial Summary Judgment, (Dkt. 86), the response in opposition thereto filed by Defendants, 2001LIVE, INC. and 2001, INC. ("**2001**" or "**Defendants**"), (Dkt. 108), Defendants' Amended Motion for Summary Judgment, (Dkt. 119), Plaintiff's response in opposition, (Dkt. 121), Defendants' reply to Plaintiff's opposition, (Dkt. 124) Plaintiff's response to Defendants' statement of undisputed material facts, (Dkt. 121-1), Plaintiff's Daubert Motion to Exclude the Opinion and Testimony of Defendants' Expert Mark Zablow, (Dkt. 87), Defendants response in opposition, (Dkt. 107), Defendants' Daubert Motion to Exclude the Testimony and Report of Plaintiff's Expert, Martin Buncher, (Dkt. 94), and Plaintiff's response in opposition, (Dkt. 109).

Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendants' Amended Motion for Summary Judgment in part, (Dkt. 119), and **DENIES** Plaintiff's Partial Motion for Summary Judgment, (Dkt. 68).

## I.    Background and Statement of Facts

### A. Plaintiff Burciaga

Plaintiff's Second Amended Complaint asserts claims based upon the alleged misappropriation of her image used on Defendants' social media account for a commercial purpose. (Dkt. 28).  Plaintiff[1] is a professional model and business owner who earns a living by promoting her image, likeness, and identity (collectively, "**image**") to select clients, commercial brands, and media and entertainment outlets. (Dkt. 86-4, at ¶2).  Plaintiff has appeared in various magazines, served as "Playmate of the Month," appeared in several reality TV series episodes, and signed as an official model for swimwear and sports companies.  Id.  Recently, Plaintiff has focused on various business ventures including women's clothing and hair extensions.  Id.  Plaintiff's social media presence currently includes 1.6 million Instagram followers, over 41,000 Facebook likes, and over 201,000 Twitter followers.  Id.

According to Plaintiff, her professional reputation is essential to the modeling and advertising job opportunities offered to her.  Id. at ¶6.  Plaintiff states that she has achieved celebrity status and fame in the modeling industry and asserts that she has spent considerable time and energy protecting her image and reputation within the industry.  Id. at ¶¶4, 7.  Plaintiff explains that it is her practice to exercise complete control over the use of her image and likeness and to receive detailed information prior to booking a job, including what the job entails, how her image will be used for that job, in addition to any subsequent uses of her image.  Id. at ¶8.  Plaintiff testified that in her experience, any fee associated with each job is negotiated based on the type of job and Plaintiff's informed

---

[1] The Second Amended Complaint included eight Plaintiffs; currently Jessica Burciaga remains the sole Plaintiff in this action against Defendants.

assessment of how a particular job may improve, harm, or diminish her brand.  Id.

Moreover, Plaintiff relayed that the use of her image is subject to considerable negotiation

and that her image may only be used with her express authority in accordance with the

agreement between Plaintiff and a particular client.  Id. at ¶9.

### B. Subject Social Media Posting

Plaintiff claims that Defendants used her image, as reflected in Exhibit B of the

Seconded Amended Complaint ("**Exhibit B**") (Dkt. 28-2), in a social media postings to

advertise and promote Defendants' commercial activities and to represent, suggest, or

imply that Plaintiff worked for or was somehow affiliated with Defendants.  (Dkt. 86-4, at

¶13).  Plaintiff states that to the best of her recollection, the photograph was taken for

Savvy.com and was to be used solely for savvy.com products and services.  (Dkt. 95-2

at 5).  Plaintiff states that she was compensated $1,000 to pose for the subject image.

(Dkt. 121-1, at ¶35).  Plaintiff also testified that she posted the image on her personal

MySpace account.  Id. at ¶37.  Exhibit B contains the photograph identified by Plaintiff as

the subject of a Facebook post along with the following text:

> Cyber-Monday was here, and we got a little sick of all the "check out this ½
> price gadget" posts! We want to give someone something, specifically a
> FREE 30-day subscription to http://www.2001live.com!  All we need is at
> least 20 likes for this post by tomorrow morning!

(Dkt. 28-2 at 2).  Plaintiff has affirmed that Defendants did not seek Plaintiff's permission

or consent to use Plaintiff's image to advertise, promote, market or endorse Defendants'

establishment, and Plaintiff insists she never would have consented to such use.  (Dkt

86-4, at ¶10).  Further, Defendants never offered or paid any compensation to Plaintiff for

the use of her image to advertise, promote, market or endorse Defendants' establishment.

Id. at ¶15.

### C. Defendants

Defendants 2001, Inc., and 2001Live, Inc., own and operate a gentleman's club in Tampa, Florida, and own and control the 2001 Odyssey websites and social medial accounts, such as Facebook and Twitter.   (Dkt. 86-10, at 38:6–8, 49:24–50:5). Defendants' corporate representative testified that Defendants also operate two websites: 2001nude.com, which is for the brick and mortar gentleman's club; and 2001Live.com, which is for the live feed on the stage and dressing room. Id. at 55:1–7.  Defendants' corporate representative described the subscription and membership service available at the 2001Live.com website whereby a consumer can buy a membership or purchase credits to view the entire stage of the club or the dressing room. Id. at 75:10–77:18. Consumers have the option of purchasing a membership for $23.87 per month for full screen high-definition access to the stage and dressing room with tipping capabilities for the entertainers. Id.  The website offers a trial membership and the option to sign-up and purchase credits, $25.00 is required for an account, which allows full view but without high-definition or full-screen capabilities. Id. at 76:1–7.

Defendants' corporate representative testified that different parties may be responsible for the club's social media marketing as opposed to the Defendants' websites. (Dkt. 86-10 at 56:6–61:5). Defendants hired outside vendors to provide visual content for their websites and Facebook page, including Michelle Germann with a company called It Takes a Geek, who provided graphic design work, and Shawn Hopper with a company called Infinity Graphics and Design, who provided social media marketing consulting services.  (Dkt. 86-2, at ¶¶ 35–40). · Defendants' corporate representative testified that he believed those vendors had the authority and consent to use the image

of Plaintiff that was posted to Defendants' websites and Facebook page as Exhibit B. (Dkt. 96-1, at 106:2–5, 111:5–17, 134:2–23).

### D. Procedural History

After she learned of Defendants' unauthorized use of her image, Plaintiff's counsel sent a cease and desist letter demanding Defendants immediately stop using Plaintiff's image, remove the image from Defendants' websites and social media accounts, and compensate Plaintiff for the unauthorized use of her image.  (Dkt. 86-4, at ¶17).  Plaintiff commenced the instant lawsuit after Defendants failed to comply with the terms of the cease and desist letter.  Id.  Plaintiff's Second Amended Complaint alleges claims for the following causes of action:  Count I—False Advertising under the Lanham Act 15 U.S.C. S1125(a); Count II—False Endorsement under the Lanham Act 15 U.S.C. S1125(a); Count III—Violation of Fla. Stat. § 540.08 Unauthorized Misappropriation of Name or Likeness; Count IV—Common Law Right of Publicity Unauthorized Misappropriation of Name or Likeness; Count V—Violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA); Count VI—Violation of Fla. Stat. §§ 812.014 and 772.11 Civil Theft; and Count VII—Common Law Conversion.

The Court dismissed Plaintiff's FDUTPA claim on July 25, 2017.  (Dkt. 40). Subsequently, Plaintiff moved for partial summary judgment in her favor (Dkt. 86), and Defendants' filed an Amended Motion for Summary Judgment (Dkt. 119).  Both motions are ripe for adjudication.

### II.    Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  Which facts are material depends on the substantive law applicable to the case.  Id. at 248.  The moving party bears the burden of showing that no genuine issue of material fact exists.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Evidence is reviewed in the light most favorable to the non-moving party.  Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009).

A moving party discharges its burden by showing there is an absence of evidence to support the non-moving party's case.  Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  Porter v. Ray, 461 F.3d 1315, 1321 (11th Cir. 2006).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Any such proffered evidence must be subject to being reduced to admissible evidence at trial.  Denney v. City of Albany, 247 F.3d 1172, 1190 n.10 (11th Cir. 2001) ("In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form.").

The filing of cross-motions for summary judgment does not give rise to a presumption that no genuine issues of material fact exist.  Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538–39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.") (quotation omitted).

## III.    Discussion

### A. Lanham Act Claims

Plaintiff brings claims for false advertising (Count I) and false endorsement (Count II) under the Lanham Act.  Section 43(a)(1) of the Lanham Act, codified at 15 U.S.C. S 1125(a)(1), states that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Both Plaintiff and Defendants move for summary judgment in their favor as to Plaintiff's false advertising and false endorsement claims under the Lanham Act. Their arguments are addressed below.

### 1. *False Advertising*

A successful Lanham Act false advertising claim requires the Plaintiff to demonstrate "an injury to commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 140 (2014). The following five elements are essential to prove a false advertising claim in the Eleventh Circuit: "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been – or is likely to be – injured as a result of the false advertising." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004); Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002). The parties do not dispute that the exhibit at issue affects interstate commerce. Their arguments regarding the remaining elements are addressed below.

### i. Literally False or True but Misleading

The first element requires Plaintiff demonstrate Defendants' posting is either literally false; or, the posting is true but misleading in context, conveys a false impression, or is likely to deceive consumers. Hickson, 357 F.3d at 1261 (citing United Industries Corp. v. Clorox, 140 F.3d 1175, 1180 (8th Cir. 1998)). If the statement is literally false,

the movant need not present evidence of consumer deception, but if the statement is found to be misleading, the Plaintiff must present proof of consumer deception.  Id.

Defendants contend the subject image is not false because it does not identify who Plaintiff is or impart statements on her behalf and because the image has not been altered in any way.  (Dkt. 119 at 10).  Plaintiff argues that Defendants' social media posting is literally false because it necessarily implies Plaintiff's association with and endorsement and support of the Defendants business, the strip club lifestyle, and activities known to occur on Defendants' premises.  (Dkt. 86, at 3).  In considering nearly identical Lanham Act claims by entertainers against various entertainment industry entities, multiple courts, including this one, have ruled that the unauthorized use of a photograph is not a literally false statement, even if the image has been altered.  Gibson v. BTS North, Inc., 2018 WL 888872, Case No. 16-24548, (S.D. Fla. Feb. 14, 2018) (citing Edmonson, et al. v. Velvet Lifestyles, LLC., et al., Case No. 1:15-cv-24442-JEM, ECF No. 174, at 14 (S.D. Fla. July 28, 2017) ("[T]he Court has found no authority (and Plaintiffs have cited none) holding that the unauthorized use of a photograph to advertise a product or business constitutes a 'literally false' advertisement."); Gibson, et al. v. Resort at Paradise Lakes, LLC, et al., Case No. 8:16-cv-791-CEH-AAS, ECF No. 142, at 27 (M.D. Fla. Feb. 2, 2018) ("The images are not literally false just because the Defendants slightly altered the Plaintiffs' photographs to include them in the advertisements.")).  Plaintiff has identified herself in Exhibit B and the photograph has not been altered.  Thus, Court finds that the subject social media posting is not literally false.

However, while not literally false the posting may be misleading.  See Osmose v. Viance, LLC, 612 F.3d 1298, 1308–09 (11th Cir. 2010).  Unambiguous statements may

be classified as literally false or true, but a statement is more likely to be merely misleading if the statement is susceptible to multiple meanings because the meaning is unclear.  Id.  The Court finds that the social media posting may be perceived as ambiguous because it provides no explanation or context for the relationship between the model, Defendants' establishments, Defendants' websites or any subscription service offered by Defendants.  The Court finds that the social media posting thus may be susceptible to multiple meanings.  See Velvet Lifestyles, LLC, Case No. 1:15-cv-24442-JEM, ECF No. 174, at 14 (S.D. Fla. July 28, 2017) (finding the "mere inclusion of a photograph of an individual in an advertisement, without more, is ambiguous.") Accordingly, the Court finds that the image may be misleading because it is ambiguous.

ii.   Deception or Capacity to Deceive

Because the advertisement is not literally false but may be misleading, Plaintiff must present evidence of consumer deception to advance her false advertising claim in the form of consumer surveys, market research, expert testimony, or other information. Hickson, 357 F.3d at 1261.  "In order to prove deception, consumer survey research is often 'key' evidence but . . . if 'full-blown consumer surveys or market research' are not available, the Plaintiff must still provide some sort of expert testimony or similar evidence." Suntree Techs., Inc., 802 F. Supp. 2d at 1288 (citing Hickson, 357 F.3d at 1261; Johnson, 299 F.3d at 1247) (internal quotations and citation omitted).

Plaintiff proffers the report and testimony of Martin Buncher to support her claim that Defendants' use of her image had the capacity to and did deceive and mislead existing and potential consumers into believing that Plaintiff voluntarily agreed to appear in the advertisements and agreed to endorse and promote 2001 Odyssey and the strip

club lifestyle and activities. (Dkt. 86, at 5). Defendants moved to exclude Buncher's report and testimony, arguing it is not based on sufficient data and is not the product of reliable principles and methods. (Dkt. 94). Upon review, the Court finds that Defendants' challenges to Buncher's report and testimony go primarily to the weight that should be afforded his survey, and not its admissibility; thus, Buncher's report and testimony meet the standards for admissibility under Federal Rule of Civil Procedure 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See Edmonson v. Caliente Resorts, LLC et al., Case No. 8:15-cv-02762-SDM-TBM, ECF No. 153, at 25 (Aug. 31, 2017) (order denying Defendants' Daubert Motion to Exclude the Testimony and Opinions of Plaintiffs' Expert Survey Witness Martin M. Buncher and Concluding that the survey's deficiencies went to the weight of the evidence, not its admissibility).

However, the Court finds the survey does not present sufficient evidence of consumer deception caused by Exhibit B because Buncher's report did not use a control group or survey respondents who were actual patrons of Defendants' establishments or websites. Buncher described the survey group as "having attended a strip club" in the past two months; however, he did not use Defendants' client list, e-mail list, or actual patrons in compiling his survey respondents. The court in Velvet Lifestyles, LLC, a substantially similar false advertising case, found the use of a control group demonstrated the advertisement's capacity to deceive because it included statements from both actual patrons of the defendant's establishment in addition to a random sample. Case No. 1:15-cv-24442-KEM, ECF No. 174, at 18–19 (S.D. Fla. July 28, 2017). The court found that the response difference between the random sample and actual patrons established the advertisement's capacity to deceive. Id. Because Buncher's survey included only

random respondents, he cannot compare those results with those of actual patrons to demonstrate consumer deception.

Courts facing similar inquiries have explained that evidence of consumer deception outside of a consumer survey may include "statements from patrons or others who viewed the subject advertisements and believed that Plaintiffs endorsed the club or would be present at any events." Lancaster v. Bottle Club, LLC, No. 8:17-cv-634-VMC-JSS, 2018 WL 2151729, at *6 (M.D. Fla. May 10, 2018), appeal dismissed, No. 18-12393-FF, 2018 WL 6524326 (11th Cir. Sept. 25, 2018) (citing Resort at Paradise Lakes, LLC, Case No. 8:16-cv-791-CEH-AAS, ECF No. 142, at 30 (M.D. Fla. Feb. 2, 2018)).  Plaintiff offers no evidence beyond Buncher's report, such as statements by actual patrons of Defendants' establishments or visitors to websites who were deceived.

Accordingly, the Court finds Plaintiff has not offered sufficient evidence of consumer deception.  Nonetheless, the Court will next consider if the social media posting had a material effect on the purchasing decisions of consumers.

### iii.  Material Effect on Purchasing Decision

A Plaintiff must also prove that the "deception had a material effect on purchasing decisions" regardless of whether the advertisement is literally false or true but misleading. Johnson & Johnson, 299 F.3d at 1247.  That is, a Plaintiff must "establish that 'the defendant's deception is likely to influence the purchasing decision.'"  Id. (quoting Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 311 (1st Cir. 2002)). "The materiality requirement is based on the premise that not all deceptions affect consumer decisions."  Id. at 1250; Osmose, 612 F.3d at 13.  This element may be

established by "evidence that the Defendants misrepresented an inherent quality or characteristic of the product." Id.

Plaintiff argues that Defendants' social media posts had a material effect on consumer's purchasing decisions because 90% of Buncher's survey respondents said they were more likely to consider the possibility of attending Defendants' club after viewing images with models than they were to consider it after viewing the same ads but without the models. (Dkt. 86, at 6). Defendants argue that the survey is insufficient because it does not provide evidence of actual deception by consumers who viewed the subject image and consequently visited Defendants' establishments, and the survey respondents do not mirror Defendants' patrons. The Court shares Defendants' concerns. As discussed above, Buncher's survey did not include a control group in addition to patrons or potential patrons of Defendants' establishments. Thus, the survey fails to present evidence of an actual consumer who saw the advertisement and either decided to attend or not to attend Defendants' establishment because of the image of Plaintiff in Exhibit B.

Moreover, even accepting Buncher's results, the Southern District of Florida recently ruled, in a nearly identical false advertising claim, that a similar survey finding that "[j]ust over 90%" of the survey participants were more likely to be interested in patronizing Defendants' establishments after seeing the advertisements that contained images of the Plaintiffs when compared to advertisements without Plaintiffs does not indicate that consumers are *actually* more likely to frequent Defendants' establishments; thus, such result does not demonstrate a material effect on purchasing decisions. Gibson v. BTS North, Inc., 2018 WL 888872 at *5, Case No. 1:16-cv-24548-MGC, (S.D. Fla. Feb.

14, 2018).  Here, as in <u>BTS</u>, Buncher's results fall short of establishing that the social medial posting at issue caused a material effect on purchasing decisions. The social media posting did not state or mention the Plaintiff by name, indicate her presence at any of Defendants' events or express that Plaintiff's content was available through Defendants' online subscription service.  The record contains no evidence that any consumers attended Defendants establishments or events, visited Defendants' websites, or purchased an online subscription because of the subject social medial posting.

Accordingly, the Court finds Defendants' subject media post did not materially affect consumer purchasing decisions. Thus, Plaintiff has not established a *prima facie* case of false advertising, and summary judgment is granted for Defendants on Count I.

### 2. *False Endorsement Claim*

In order for a Plaintiff to succeed in a Lanham Act false endorsement claim, she "must show (1) that [she] had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." <u>Suntree Techs., Inc. v. Ecosense Int'l, Inc.</u>, 693 F.3d 1338, 1346 (11th Cir. 2012) (citation omitted); <u>see also Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.</u>, 683 F.3d 1266, 1278 (11th Cir. 2012) (explaining that "[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act.") (citation omitted)).

### i.  <u>Mark</u>

The mark at issue in the first element is the Plaintiff's identity. <u>Velvet Lifestyles, LLC.</u>, Case No. 1:15-cv-24442-JEM, ECF No. 174 (S.D. Fla. July 28, 2017) (citing <u>ETW Corp. v. Jireh Publ'g Inc.</u>, 332 F.3d 915, 926 (6th Cir. 2003).  Defendants argue that

Plaintiff does not have a protectable interest in her identity for purposes of a trademark infringement analysis because she does not rise to the level of national fame or celebrity warranting such protection.  (Dkt. 119, at 5).  However, the law is clear that celebrity status is not required to maintain such an action; rather the Plaintiff must demonstrate, at a minimum, "an existing intent to commercialize an interest in identity."  Arnold, 642 F. Supp. 2d at 734 (quoting Condit v Star Editorial, Inc., 259 F. Supp. 2d 1046,1052 (E.D. Cal. 2003).  It is undisputed that Plaintiff is a professional model, actress, and business owner who has earned a living for herself in the entertainment industry.  (Dkt. 86-5). Plaintiff's images have been featured by respectable companies and commercial brands to promote their products and services.  Id.  Accordingly, Plaintiff has established an existing intent to commercialize her identity and satisfied the first element of her false endorsement claim.

The Court finds that Plaintiff's mark is sufficient to warrant trademark protection and next considers whether Plaintiff has established a likelihood of consumer confusion.

ii.  Confusion

The Eleventh Circuit has delineated the following seven-factors to guide an evaluation of whether a likelihood of confusion exists:

(1) Strength of the mark alleged to have been infringed;

(2) Similarity of the infringed and infringing marks;

(3) Similarity between the goods and services offered under each mark;

(4) Similarity of the actual sales methods used by each holder of the mark, such as the holder's sales outlets and customer base;

(5) Similarity of advertising methods;

(6) Intent of the alleged infringer to misappropriate goodwill of the proprietor; and

(7) The existence and extent of actual consumer confusion.

Tana v. Dantanas, 611 F.3d 767, 774–75 (11th Cir. 2010) (citing Welding Services, Inc. v. Forman, 509 F.3d 1351, 1360 (11th Cir. 2007)).

Courts have highlighted the strength of the mark and the existence and extent of actual confusion as the two most important factors in this deliberation. Id.; Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Land's End Acquisition Corp., No. 8:16-cv-828-EAK-JSS, 2016 WL 9526680, at *2, (M.D. Fla. Nov. 7, 2016); Lancaster, 2018 WL 2151729, at *2. Moreover, courts have recognized the flexibility of the factors in order to suit the unique facts of each case. See Swatch Watch, S.A. v. Taxor, Inc., 785 F.2d 956, 958 (11th Cir. 1986) (recognizing that "new factors may merit consideration" in determining whether there is a likelihood of confusion); see also Tana, 611 F.3d at 777 (finding geographic location a relevant and proper factor weighed in a false endorsement likelihood-of-confusion analysis). For instance, courts have recognized that in a celebrity false endorsement case certain factors are inapplicable, and the most relevant factors include: strength of mark, the existence or extent of actual confusion, and Defendants' intent to misappropriate Plaintiff's goodwill. See Gibson, Case No. 8:16-cv-791-CEH-AAS, ECF No. 142, at 16 (M.D. Fla. Feb. 2, 2018).

a.  Strength of the Mark

A court considers the following four factors to evaluate mark strength:  (1) length and nature of use; (2) nature and extent of advertising and promotion of the mark; (3) efforts to promote a conscious connection between the mark and the business; and (4) the degree of actual recognition by the public that the mark represents the proprietor's

product or services. <u>See</u> <u>Tana,</u> 611 F.3d at 776. Although generally tailored to trademark name cases, courts considering similar false endorsement claims have applied these general principles to evaluate the strength of marks sufficiently similar to the image in Exhibit B. <u>BTS</u>, 2018 WL 888872, at *6–7 (S.D. Fla. Feb. 14, 2018). As recognized by the Southern District of Florida in <u>BTS</u>, these four factors do not lend themselves as easily to a mark that is an identity rather than a name; however, Plaintiff has testified that she has used her image to establish a brand for modeling and other professional opportunities and seek to control the use and dissemination of her image. <u>Id.</u>; (Dkt. 86-4, at ¶2). The Court finds that Plaintiff's declaration satisfies the first three prongs.

Plaintiff argues that her degree of recognition supports the strength of her mark because she is a well-known and reputable model with wide recognition and a large social media following. (Dkt. 86, at 14). Specifically, Plaintiff's image has been used by commercial brands to promote their products and services in addition to modeling for companies and magazines that are directed at the exact demographic to which Defendants cater. <u>Id.</u> However, Plaintiff does not present specific evidence of her degree of recognition among *Defendants' consumers*. In false endorsement cases, the strength of the mark is the level of recognition that the celebrity has among consumers of the allegedly infringing goods. <u>Lemon v. Harlem Globetrotters, Int'l, Inc.</u>, 437 F.Supp.2d 1089, 1095 (D. Ariz. 2006) (internal citations omitted). Moreover, Buncher's survey does not support this factor because it did not inquire whether any respondents recognized Plaintiff. Thus, Plaintiff fails to demonstrate a strong mark among Defendants' consumers. Accordingly, the Court finds that this factor weighs in favor of Defendants.

       b. Existence and Extent of Actual Consumer Confusion

Eleventh Circuit jurisprudence considers this factor, actual confusion in the consuming public, as the most "persuasive evidence in assessing likelihood of confusion." Tana, 611 F.3d at 779 (citing Alliance Metals, Inc. v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000)).  Defendants argue that the posting has not created consumer confusion because it does not provide Plaintiff's name or imply, directly or indirectly, that Plaintiff would appear at Defendants' establishment.  (Dkt. 119 at 8).  Moreover, Defendants state that Plaintiff has failed to identify even one consumer who recognized Plaintiff from the subject image and was actually deceived or mislead by the post.  Id. Plaintiff submits that the Buncher survey showed actual confusion by consumers.  (Dkt. 86, at 15–16).  Yet, for the reasons discussed above, the Buncher survey does not convey consumer confusion.   Plaintiff has not demonstrated that Buncher surveyed actual consumers or patrons of Defendants' establishment, websites, or social media pages. Therefore, his survey cannot demonstrate whether consumers experienced actual confusion, much less the extent of such confusion.  Moreover, because Buncher did not use a control group of random survey respondents, the survey does not measure whether the social media postings created actual confusion.  As stated in Tana, Eleventh Circuit cases finding actual confusion have contemplated "much more significant evidence." 611 F.3d at 779 (citing Alliance Metals, Inc. v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000) (finding actual confusion where plaintiff presented more than a dozen checks and seven invoices received in error based on a confusing combination of the plaintiff and the defendant's names); Conagra, Inc. v. Singleton, 743 F.2d 1508, (11th Cir. 1984) (finding actual confusion based on numerous instances where people assumed an affiliation between the parties' businesses, including inquires by distributors to plaintiff about

defendant's services)). Accordingly, the Court finds that this factor weighs in favor of Defendants.

### c. Defendants' Intent to Capitalize on Plaintiff's Goodwill

Plaintiff claims this factor favors her because Defendants used the social media posting with the intent to profit, save photo-shoot costs, and create consumer confusion as to whether Plaintiff endorsed Defendants' products and services by knowingly using the false marketing materials. (Dkt. 86, at 16). Plaintiffs assert that Defendants knew full well that Plaintiff did not work for Defendants; thus, they knew the falsity of their marketing materials. (Dkt. 121, at 9). Defendants claim there was no intention to misappropriate Plaintiff's image because Defendants did not create the social media posting. Moreover, Defendants' corporate representative testified that he believed the outside vendors hired to provide visual content for Defendants' website and Facebook page had authority and consent to use the image in Exhibit B. (Dkt. 96-1, at 106:2–5, 111:5–17, 134:2–23). Defendants have, at a minimum, created an issue of fact as to who created and uploaded the social media posting and whether or not Defendants had knowledge that the use of the image was unauthorized, which would belie any intent on their part. (Dkt. 108, at 13). Thus, the Court finds that this factor is neutral.

In sum, taking these factors together, Plaintiff has not presented evidence sufficient to establish a likelihood of confusion, and this is fatal to her false endorsement claim. Therefore, her motion must be denied. Further, the Court finds that, as a matter of law, Plaintiff *will not* be able to establish such confusion, and her false endorsement claim should therefore not proceed to a jury. Accordingly, Defendants are entitled to summary judgment as to Count II.

## B.  Remaining State Law Claims

The Court has resolved the Plaintiff's federal claims, and thus only Plaintiff's state law claims remain.  Resolution of these claims necessitates analysis of Florida law.  The Supreme Court has advised that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988).  Moreover, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).  Thus, the Court will decline to exercise its supplemental jurisdiction over these remaining claims.  See 28 U.S.C. S 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction.").  These claims will be dismissed without prejudice to be refiled in an appropriate forum.

## IV.    Conclusion

Plaintiff's Lanham Act claims, Counts I and II, fail and summary judgment is granted for Defendants on those claims.  As the federal claims are disposed of before trial, the state law claims are dismissed without prejudice so that Plaintiff may reassert them in state court, if she wishes.

Upon consideration of the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.      Plaintiff's Motion for Partial Summary Judgment, (Dkt 86), is **DENIED**;

Case No: 8:16-cv-03243-T-17AEP

2.     Defendants' Amended Motion for Summary Judgment, (Dkt. 119), is **GRANTED IN PART** as to Plaintiff's False Advertising Claim (Count I) and False Endorsement Claim (Count II);

3.     The **CLERK** is directed to enter judgment in favor of Defendants and against Plaintiff on Counts I (False Advertising) and II (False Endorsement) of Plaintiff's Second Amended Complaint;

4.     The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims in Counts III through VII, and those claims are dismissed without prejudice to be refiled in an appropriate forum; and

5.     The **CLERK** is directed **CLOSE** this case and terminate any pending motions.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 15th day of January, 2019.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record

- 21 -